Good morning, Your Honor. May it please the Court, Benjamin Chin for the petitioner, Lin Dao Lu. In this case, Your Honor, it is about the unfairness of punishing an illiterate asylum seeker whose testimony was found to be credible by the immigration judge, but the corroborating evidence that was submitted was viewed to lack credibility, and therefore this perceived lack of credibility resulted in an adverse credibility determination by the immigration judge, and because of that the immigration judge denied the entire claim. However, the petitioner submits that an adverse credibility finding must be supported by substantial evidence as established by the circuit in the case of Guay v. INS and Alvarez v. Santos, Alvarez-Santos v. INS, and we contend that there is, the substantial evidence does not support the adverse credibility determination by the immigration judge. The immigration judge stated in her oral decision that this responded was credible in his testimony. It was consistent with his story. The statements that he provided in his own personal statement was consistent. However, she had a problem with three particular documents. One, the merit certificate, two, the sterilization certificate, and three, the notice of fine. And in each instance, the immigration judge mentioned that there were certain omissions on the documents that led her to question the authenticity of the documentation. However, as the court has established in Wong v. INS, that minor discrepancies do not justify an adverse credibility finding, citing Chinn v. INS. There's a whole line of cases that talk about the fact that certain omissions, clerical errors, or even just the failure to have a box that lists a date of birth do not satisfy the standard here. And basically... It seems to me what the real problem in the case is, and we maybe will have the government address it, is that you have these documents from China, and there has been a fair amount of fraud in terms of immigration documents being duplicated or whatever, but that nobody actually knows what they're supposed to look like. In other words, if you had a U.S. birth certificate and another U.S. birth certificate, we would know that A looked like B or A didn't look like B. And here we have a situation where the I.J. himself is saying, this is a subjective view of what these Chinese documents should look like. And so what I was looking for in the record, and maybe you can help me, is there any evidence in the record of what the document is supposed to look like? For example, a State Department official who says this is what they look like, or a Chinese government affidavit that says this is what a birth certificate looks like, and sometimes we don't fill in all the blanks. Is there anything like that? Your Honor, I don't believe there's anything in the record that guides us to establishing what a birth certificate, sterilization certificate would look like. So when the I.J. says, well, this is my subjective view of what they should look like, is that sufficient to make an adverse credibility finding? Excuse me. Sorry, Your Honor. Not under Shaw v. INS as established by this court. Shaw v. INS says that the judge can't create a subjective view of what a document should look like, whether or not it's a birth certificate, sterilization certificate, or a notice of fine. And in this case, she basically says, I have problems with the omissions of the resident identification number of the alien and his wife. But that's not something that the alien or his wife can control. The person that inputs the data on these official documents is the person that has control over the way the document is prepared, not the alien. So I don't believe that the I.J. can find fault with the alien because the document was prepared in that fashion. In any event, I'd like to continue with the arguments that the government has made. And the government has basically said that, all right, even though we have an I.J. that found the petitioner's testimony to be credible, however, that can be wiped out entirely by what the State Department country reports say. Well, if you were to adopt that position, then every single asylum seeker from China who has had problems with the family planning unit from the period 1990 to 1995 could essentially have their asylum claims denied based upon one document that the State Department presents. And I don't believe that is something that is fundamentally fair. And I believe that the Zeng versus Ashcroft case that recently was addressed or that was ruled on by this circuit discusses that you have to look at individualized testimony of the case. In that regard, you're probably happy this petition was filed before May 10, 2005. Right. The Real ID Act and its applicability. Yes, Your Honor. Other than that, Your Honor, I don't have anything else to add. If you want to respond to the government argument, certainly can. Thank you for your argument. Counsel? Good morning, Your Honor. As it pleases the Court, Barry Pantanato will carry on behalf of the Respondent, Attorney General Alberto Gonzalez. The immigration judge's decision actually had two parts. Only one part of it is actually in front of the Court today. There was the adverse credibility finding, and then the immigration judge also made an alternative finding that asylum should be denied in the exercise of discretion. The Board, in its decision, affirmed only the credibility finding. So only that part of the decision is in front of this Court. So essentially the roadmap here would be if this Court decides it would affirm the immigration judge's decision on credibility, that would be the end of the matter and the petition should be denied. On the other hand, if the Court were to reverse the immigration judge's decision on credibility, the Court should remand under Ventura so that the Board can take a look to see, in the exercise of discretion, as the immigration judge found, whether the asylum claim should be denied. Because essentially, if the Court found statutorily eligibility for asylum, generally you'd remand for a discretionary determination, and that's what we have here. So the Board needs to take a look at that. I'm curious to see that IJs are getting the word about if they make an adverse credibility determination to go on and make a determination on the merits of the asylum withholding or CAT claim for the very purposes you described. And we're starting to see those now, but for a long time they would stop at credibility. I think that's a keen observation. We're seeing more of that at OIL, the alternative findings by the immigration judges. Essentially, in this case, the immigration judge found that three of the documents were not inherently reliable or trustworthy. What was the basis for that? I think, as she points out, in discussing one of the documents, we have an immigration judge here who has a certain expertise on deciding asylum cases. And this is a Honolulu case, and Honolulu is one of those districts where they have a lot of these Chinese asylum cases go forward. So the immigration judge is used to seeing a lot of these documents repeatedly and has certain expectations of what they generally look like or should include. And she does make that specific finding, at least in terms of one of the documents. But I think that can be carried over to the other two documents, where she talks about the notice of the fine document. She makes it very clear that this is not on the printed form that I've usually seen many times, you know, before. It's inconsistent with the normal form that I have seen in other cases. Regarding the documents, this case is really pretty simple. As to the marriage contract, she found it was unreliable. The marriage certificate at Record 173, she found it was unreliable because it didn't list the couple's identity numbers. And this court has probably seen those identity numbers repeated over and over again in a lot of these Chinese documents. It's something akin to our Social Security number. It sort of sticks with you. Natives have these identification numbers and it appears on their documents routinely. And here it was conspicuously absent. The other thing on the marriage certificate that the immigration judge noted was... Was there anything other than this IJ's supposed expertise in the matter that would render this certificate not authentic or invalid because it didn't have that on it? There are lots of U.S. documents that sometimes have Social Security numbers on them. Sometimes they don't. I would agree, Your Honor. I think one of the things the court needs to do is look at the totality here and not deconstruct the finding. But look at the totality of it and look, okay, maybe there's some explanation for one document having a missing name or identification number or some critical. But when the three major documents that are submitted and there's something suspect or deficient on the face of all three of the documents, then you sort of have to look at the totality rather than taking apart each individual document. Let's take the question of the fine. The notice of the fine document? The notice of the fine document. The IJ says, well, it doesn't give an address and it's not on a pre-printed form like the family planning. Well, there's no evidence to suggest that somehow criminal fine documents in China are the same as family planning documents. Or there's no evidence to suggest that she's seen lots of, you know, notice of fine documents. So here it just seems to me to be speculation as if I were a U.S. judge, I'd say, look, this is what we usually see coming out of U.S. courts. But if you ask me what a fine document looked like in China, I have no idea. And she doesn't say I've seen other fine documents. Well, I read her decision to say it's not printed on a pre-printed form as she usually sees. As she usually sees in family planning operations certificates. So I mean, so she's saying, well, the fine document isn't on a pre-printed form. And I usually see pre-printed forms in family planning. So therefore, I'm going to discount this document. They like if she saw for the first time a DD-214 discharge certificate and she's used to seeing Social Security disability findings and saying, well, this doesn't look like the Social Security documents I'm used to seeing. So this thing must be invalid. If that, in fact, is the case in terms of she was sort of comparing apples and oranges. Then she makes two other findings about the notice also that troubled her. One is the lack of address of the couple. In other words, it essentially doesn't give any residency identifying criteria along with the document. And again, it's absent any registration numbers identifying the couple. Well, these cases come up all the time, obviously. And in the country report, there's a major concern of marriage pride, basically. So I guess what always baffles me when I read this is why the INS doesn't put on evidence about documents in China. So that we'd have evidence in the record and you could benchmark it and then the IJ would make a decision. I mean, there are cases we see where they've been sent to a forensic check. And then they say it didn't pan out. And there is a case cited in the briefs where that happened. What is the obligation once these documents are submitted, either on the part of the Justice Department or the petitioner, to put in what we would call normal authentication material? I think there's two things. First of all, keeping in mind the burden of proof here is always on the alien to establish their eligibility for asylum. But I think one of the reasons why there's not this, as you describe it, as benchmarks of how we can determine which of these documents are legitimate or valid and which are not, is because these documents are coming from, a lot of them are coming out of Fujian province in southern China. That's where a lot of these Chinese asylum cases come out of. But they're coming out of cities, they're coming out of rural areas, they're coming out of this little county or this little town or this little rural village. And there's not this sort of uniformity in the documents. Precisely. And so then you have the IJ making, trying to fit them into kind of square peg in a round hole, because they are. They said some of them come out of little tiny towns, literally. I mean, there's virtually no big established government in City Hall in some of these little towns. But I think some of the things that the immigration judges consistently see in these documents are the names of the people, some identifying addresses, and most importantly, these identity numbers that seem to always be there when you're identifying people in China. These residency numbers, because everybody in the village is registered and everybody has a registration number. And all the documents created around them, generally you see that they have some identification numbers. And in the notice, that was one of the things that was missing. The only other document, we've talked about two of them, is the third one, and that's the family planning operations certificate found in the record at 201. And the immigration judges points out a number of things that she found to be troubling with that particular document. The wife's residency identification number, again, is left blank, clearly where there's a spot for it. And she also questioned why, in fact, this document would even be issued to the petitioner's wife. Because it clearly looks like it was issued for the purpose of excusing her from having to go to work for the next 21 days. It says it allows her to take 21 days off for recuperation. And, in fact, there's nothing, no record evidence that the petitioner's wife was employed. So why would a document be issued with the primary purpose being to excuse her from work when, in fact, she was not employed? And then the third concern, where the immigration judge was concerned that this is supposed to be an official document, yet the wife's, again, identity number is missing. And instead of indicating her date of birth and where it would ordinarily be, the document essentially just said she was 25 years old. Let me ask one thing about, you've been eating at me for a while, what I think we call the fine document. And I'm not sure if I'm looking at the right one. It's in the record you're on at 205. Well, I'm looking at something 194. What's 194? You know, sometimes these documents appear several places because they're... What I'm looking at is the Chinese language version, which is why I'm not sure what it is. And maybe I've just matched it up incorrectly. It's the one where she says it's not a preprinted form. And I look at it, and I thought it was a preprinted form. And so that's why I've been troubled the whole time I've looked at this. I can't figure out what she's talking about. Well, this is not one of the three documents that she found. According to the translated part of this, this is the Fujian Province receipt of unplanned birth fee. I think this is one of the... I think that's exactly what she's talking about. But when you compare that to, let's see, what is it, 205? It's a slightly different document, and I think that's the one... Okay, that's the one. That's the one, the 205 is the one that she was speaking about and is having trouble with. There were a number of other documents which she didn't seem to call into question or didn't specifically give her trouble. And that might be one of the ones you're looking at, Judge Clifton. If there's nothing further, I'll... Do you know whether this particular I.J. speaks or reads Mandarin? I don't know, Your Honor. I don't know. Okay. Anything you're dying to tell us? This I.J. does not speak or read Mandarin. She oftentimes relies on me to do it. But in any event, Your Honor, basically the point is, and I don't want to lose focus, basically is that this respondent was found to be credible. And under LADA versus INS, you don't need to get to the issue of corroborative evidence. However, having already addressed it, I think the judge needs to support the adverse credibility finding with substantial evidence. In this case, there isn't any substantial evidence to support that. And as a geographic footnote to this, the respondent hails from a tiny island off of the coast of Fujian Province. So the documents that are produced by local officials can significantly vary from the documents produced in the city of Fuzhou, which is a larger city in Fujian Province. So again, if the judge is looking for a preprinted specific type of documentation, I don't believe you'll be able to find it. Or the State Department officials, the investigators, probably don't have the opportunity to even go to the island of Pingtan to do such an investigation. So I don't believe that what's addressed in the State Department country reports necessarily includes findings of documents that are produced from that particular island, even though the island of Pingtan falls within the region of the Fujian Province. Thank you. Okay, thank both counsel for their arguments. The case will be submitted for decision.
judges: Hawkins, McKeown, Clifton